# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | |
|---|---|
| ALBERTO RAMOS, <br><br> Plaintiff <br><br> v. <br><br> SCOTT ERWIN, JENNIFER GILBREATH, HALLIE SMITH, FREDRICK MORRISON, GINO DAGO, <br><br><br> Defendants. | Case No. 4:23-cv-2517 <br><br> **JURY DEMAND** |

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR CONFIDENTIALITY AND PROTECTIVE ORDER

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES 3

NATURE AND STAGE OF THE PROCEEDING 4

STATEMENT OF ISSUES 6

FACTUAL BACKGROUND 6

LEGAL STANDARD 7

ARGUMENT 8

    I.   The Texas Public Information Act and Other State Statutes Do Not Govern or Control Discovery in this Federal Section 1983 Lawsuit. 9

    II.  Federal Law Favors Public Access to Records Bearing On Police Misconduct. 12

    III.  The Public's Common Law Right of Access to Defendants' Police Records —All of Which Bear on an Issue of Legitimate Public Concern—is not Outweighed by Defendants' Privacy Interests. 14

    IV.  The Court Should Specifically Exclude Houston Police Department Reports and Body Worn Camera Footage from Any Protective Order Because, Although Defendants Have the Burden, They Failed to Offer Any Particular Basis on Which These Files Should Be Deemed Confidential. 16

CONCLUSION 17

## TABLE OF AUTHORITIES

**Statutes**

Tex. Local Gov't Code § l43.089(g)……………………………………………………………….passim
Tex. Local Gov't Code § 143.1214……………………………………………………………………..17
Tex. Gov't Code § 552.108(b)(2)………………………………………………………………………17
Tx. Occ. Code Ann. § 164.007(c)…………………………………………………………………....17

**Court of Appeals for the Fifth Circuit**

*Am. Civil Liberties Union of Miss., Inc. v. Finch*. 638 F.2d 1336 (5th Cir. 1981)…………..……….passim
*Avondale Industries, Inc. v. NLRB*, 90 F.3d 955 (5th Cir. 1996)……………………………………….16
*Coughlin v. Lee,* 936 F.2d 1152 (5th Cir.1991)……………………….………………….....18
*Fraire v. City of Arlington,* 957 F.2d 1268 (5th Cir. 1992)……………………….……………...18
*In re Terra Int'l,* 134 F.3d 302 (5th Cir. 1998)…………………………………………….....passim
*Landry v. Air Line Pilots Association,* 901 F.2d 404 (5th Cir. 1990)……………………………….....9
*United States v. Garrett*, 571 F.2d 1323 (5th Cir. 1978)…………………………………………….9, 20
*Zavalla v. City of Houston,* 264 F.3d 1142 (5th Cir.2001)…………………………………………..18

**Court of Appeals for the Third Circuit**

*Cipollone v. Liggett Group,* 785 F.2d 1108 (3rd Cir. 1986)……………………………………………20
*Pansy v. Borough of Stroudsburg,* 23 F.3d 772  (3d Cir. 1994)……………………………….……..passim

**Northern, Southern, Eastern, and Western District of Texas**

 *Ass'n of Am. Physicians & Surgeons v. Texas Medical Board,* No. A-08-CV-675-LY, 2011 WL 13274196 (W.D. Tex. Dec. 9, 2011)……………………………………………………………….....passim
*Campos v. Webb County, Texas,* 288 F.R.D. 134 (S.D. Tex. 2012)…………………………………………..9
*Carnaby v. City of Houston*, No. 4:08-cv-1366, 2008 WL 4546606 (S.D. Tex. Oct. 10, 2008)……..passim
*Gutierrez v. Benavides,* 292 F.R.D. 401 (S.D. Tex. 2013)…………………………………….…passim
*Morrow v. City of Tenaha*, No. 2-08-cv-288-TJW, 2010 WL 3927969 (E.D.Tex. Oct. 5, 2010)…....….16
*Roque v. Harvel,* No. 1:17-cv-932, 2019 WL 5265292 (W.D. Tex. Oct. 16, 2019)………………....passim
*Smith v. Harris County, Texas,* No. 4:15-cv-2226, 2017 WL 11845922 (S.D. Tex. 2017)……………….10
*United Surgical Partners Intern., Inc. v. Stitt,* 2014 WL 2547062 (N. D. Tex. 2014*)*…………………....16

**Other Cases**

*Chauvin v. Sheriff Henry Lee,* No. 99-2200, 2000 WL 567006 (E.D.La. May 08, 2000)……………passim
*D'Antoni v. Kenner Police Officer Anthony Roach,* 1997 WL 627601 (E.D. La.)………………….....16
*Farnsworth v. Procter & Gamble Co*., 758 F.2d 1545 (11th Cir. 1985)…………………………………..9
*Segraves v. City of Zachary,* No. 08–357–JJB–SCR, 2009 WL 3764010 (M.D.La. Nov. 9, 2009)………16
*Walters v. Breaux*, 200 F.R.D. 271 (W.D La. Apr. 18, 2001)………………………………………….10

## NATURE AND STAGE OF THE PROCEEDING

On July 10, 2023, Plaintiff Alberto Ramos ("Mr. Ramos") filed a Complaint against Houston Police Department ("HPD") Officers Scott Irwin,[1] Gino Dago, Frederick Morrison, Hallie Smith, and Jennifer Gilbreath (collectively, "Defendants") under 42 U.S.C. § 1983 for violating his Fourth Amendment Rights to be free from unlawful arrest and excessive force. *See* Doc. 1 ("Complaint"). Over the months that followed, Defendants each filed individual yet substantively identical motions to dismiss, which Mr. Ramos opposed in turn. *See* Docs. 12, 16, 20, 22, 26, 29.

On January 24, 2024, Mr. Ramos filed a status update notifying the Court of the results of his related criminal jury trial, which was resolved by a jury verdict largely in his favor. *See* Doc. 27. On March 19, 2024, the Court issued an omnibus order granting in part and denying in part all Motions to Dismiss. *See* Doc. 35. The Court did not dismiss any claims from Mr. Ramos' Complaint. *See id.* The Court declined to dismiss Mr. Ramos' false arrest claim and determined that qualified immunity did not shield Defendants' conduct, because "[a] suspect's race and sex alone cannot provide reasonable suspicion—and thus, not the high standard of probable cause for an officer to stop them." *Id*. at 10. The Court declined to dismiss Mr. Ramos' excessive force claim related to the tackle arrest and again, denied qualified immunity, finding that "the deluge of authority and obviousness of the violation is such that no reasonable officer . . . would have concluded that it was constitutionally permissible to grab and tackle an individual to the ground where the individual had committed no crimes and immediately complied with orders." *Id.* at 16-17. Finally, the Court declined to dismiss Mr. Ramos' excessive force claim related to hogtying and, again, denied qualified immunity, finding that "*Gutierrez, Goode, and Aguirre*. . .[each]

---

[1] This is the correct spelling of Defendant Irwin's name, which was spelled incorrectly as "Erwin" in prior submissions.

standing alone could have supplied Defendants with 'fair notice' that their conduct was unconstitutional; together, the three cases uncontrovertibly provided such notice." *Id.* at 19. The Court also determined that none of Mr. Ramos' claims were *Heck*-barred. *See id.* at 5-8.

The Court partly granted the Motions to Dismiss based on the uncontroversial notion that the Defendants who were not alleged to have been involved in some of these constitutional violations cannot be liable for them. *See* Doc. 35 at 9. As such, the Court simply dismissed: (1) Defendants Dago, Smith, and Morrison from Mr. Ramos' tackling excessive force and false arrest claims; and (2) Defendants Gilbreath and Irwin from Mr. Ramos' hogtying excessive force claim. *See id.* at 9, 19.

On April 16, 2024, Defendants filed a Notice of Appeal of the Court's March 19, 2024 Order denying dismissal based on qualified immunity. *See* Doc. 36. The parties appeared for oral argument on the issue on December 5, 2024. On December 9, 2024, the United States Court of Appeals for the Fifth Circuit affirmed the Court's decision. J. No. 24-20164; Dec. 9, 2024.

The parties submitted a Joint Discovery/Case Management Plan on May 2, 2025. *See* Doc. 49. Counsel for both parties indicated that they would "make the initial disclosures required by Rule 26(a) on or before May 15, 2025" and "send all responses on or before May 15, 2025." *Id.* at 2-3. Despite those representations, and despite Plaintiff sending all responsive documents on the agreed-upon deadline, Defendants did not meet the deadline. Instead, Defendants sent Mr. Ramos: (1) a Motion for Confidentiality and Protective Order ("Motion for Protective Order") at 3:01 p.m.; and (2) a link to some, but not all, responsive files at 6:49 p.m. In the link, Defendants indicated that they would provide an additional 11 withheld documents *after* reviewing Mr. Ramos' response to the Motion for Protective Order.

5

Mr. Ramos reviewed the Motion for Protective Order and communicated his objections to Defendants' decision to withhold documents via email on Monday, May 19, 2025. At Mr. Ramos' request, the parties met and conferred on the Motion for Protective Order, but this was unsuccessful.

During a May 21, 2025 Scheduling Conference, Plaintiff requested the Court's assistance in securing the withheld documents. The Court advised Mr. Ramos to file an Opposition to Defendants' Motion for Protective Order within 10 days. Mr. Ramos now files this Opposition.

## STATEMENT OF ISSUES

1. Whether the Texas Public Information Act and Other State Statutes Govern or Control Discovery in this Federal Section 1983 Lawsuit?

2. Whether Federal Law Favors Public Access to Records Bearing on Police Misconduct?

3. Whether the Public's Common Law Right of Access to Defendants' Police Records —All of Which Bear on an Issue of Legitimate Public Concern—is Outweighed by Defendants' Privacy Interests?

4. Whether the Court Should Specifically Exclude Houston Police Department Reports and Body Worn Camera Footage from Any Protective Order Because, Although Defendants Have the Burden, They Failed to Offer Any Particular Basis on Which These Files Should Be Deemed Confidential?

## FACTUAL BACKGROUND

On July 11, 2021, HPD's dispatch notified Defendant Irwin of a 911 call alleging that a "drunk" "Hispanic" male had committed an assault against a "Hispanic" female. Doc. 1 at ¶ 16. Defendant Irwin did not receive any other physical descriptors such as height, weight, clothing, or hair color. *Id.* ¶ 17. Defendant Irwin then saw Mr. Ramos, who is a Hispanic male, peacefully

6

walking on a public sidewalk, by himself, with no Hispanic female nearby. *Id.* ¶¶ 22-28. Despite Mr. Ramos' full cooperation, Defendant Irwin suddenly grabbed Mr. Ramos' arm and tackled him to the ground, placing him under arrest. *Id.* ¶ 37. Almost immediately thereafter, Defendant Gilbreath arrived on the scene and helped Defendant Irwin tackle Mr. Ramos. *Id.* ¶¶ 41-47. Eventually, even though Mr. Ramos was handcuffed and secured inside a police vehicle, Defendants Dago, Smith, and Morrison pulled Mr. Ramos back out of that police vehicle, laid him prone on the concrete, put leg restraints on him, and tied his handcuffs to his leg restraints, thereby hogtying him. *Id.* ¶¶ 75-76. Mr. Ramos experienced severe bruising on his ribcage and his arm, and was hospitalized for his injuries. Doc. 1 at ¶¶ 8, 80, 82, 97. In addition to the physical injuries, Mr. Ramos suffered fear, embarrassment, humiliation, reputational damage, inconvenience, and trauma that permeates his personal and professional life. *Id.* ¶¶ 83-84.

## LEGAL STANDARD

When determining whether to grant a protective order, courts must balance the requesting party's need for the information against the injury that might result if uncontrolled disclosure is compelled. *See Smith v. Harris County, Texas,* No. 4:15-cv-2226, 2017 WL 11845922, at *2 (S.D. Tex. 2017); *see also Gutierrez v. Benavides,* 292 F.R.D. 401, 404 (S.D. Tex. 2013) (citing *Pansy v. Borough of Stroudsburg,* 23 F.3d 772, 785 (3d Cir. 1994)). Here, the burden is on the Defendants, as movants for the protective order, "to show the necessity of its issuance, which contemplates a particular and specific demonstration of fact as distinguished from stereotyped conclusory statements." *United States v. Garrett*, 571 F.2d 1323, 1326 n.3 (5th Cir. 1978); *In re Terra Int'l, Inc.,* 134 F.3d 302, 306 (5th Cir. 1998). As such, Defendants must show good cause and a specific need for protection. *See* Fed. R. Civ. P. 26(c); *see also Landry v. Air Line Pilots Association,* 901 F.2d 404, 435 (5th Cir. 1990). Good cause exists when justice requires the

7

protection of a "party or person from any annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c). The showing required under Fed. R. Civ. P. 26(c) must be sufficient to overcome the other party's legitimate and important interests in trial preparation. *See Campos v. Webb Cnty. Tex.,* 288 F.R.D. 134, 138 (S.D. Tex. 2012). The court in *Campos* explained:

> [T]he higher burden imposed on a party who is seeking a protective order, as opposed to a witness seeking one, stems from the non-movant's legitimate interest in trial preparation and the discernable importance of the witness whose deposition is at issue. *See, e.g., Jennings,* 201 F.R.D. at 276 (maintaining that the plaintiff's testimony "is critical to the lawsuit, and defendants must be permitted to take it in order to develop their defense of this case"). Significantly, the showing required under Rule 26(c) must be sufficient to overcome the opposing party's important interests in conducting discovery.

288 F.R.D. at 138.

## ARGUMENT

Mr. Ramos does not oppose the entry of a protective order in this case, nor does he object to: 1) sensitive personal information; 2) health information; 3) information protected by *applicable* statute; or 4) criminal investigation information pertaining to non-parties being deemed confidential. *See* Doc. 52 at 4; *see also Walters v. Breaux*, 200 F.R.D. 271, 274-75 (W.D. La. Apr. 18, 2001) (accommodating Defendant law enforcement officers' privacy concerns through a protective order requiring the redaction of all sensitive PII including medical information, social security numbers, home addresses, and home telephone numbers contained in the records). Such sensitive, health, or statutorily protected information should simply be redacted from Defendants' files. *See id.* All other information in the files should be made readily available to Mr. Ramos without restriction.

Mr. Ramos opposes Defendants' attempt to render all police records confidential in this case.[2] *See generally* Doc. 52. Defendants' reliance on provisions of the Texas Public Information Act to justify a broad protective order are unavailing. As discussed below, in a Section 1983 case, federal law governs evidentiary disputes–state statutes do not and cannot control. Further, precedent in this Circuit establishes that there is a public interest in records that bear on police misconduct, an issue of legitimate public concern.

Mr. Ramos has: (1) outlined his objections to Defendants' Motion for Protective Order below; and (2) submitted a narrower and more appropriate proposed protective order which should govern the present case.

## I. The Texas Public Information Act and Other State Statutes Do Not Govern or Control Discovery in this Federal Section 1983 Lawsuit.

Citing various provisions of the Texas Public Information Act ("TPIA"), Texas Local Government Code, and the "Meet and Confer Agreement between the Houston Police Officer Union….and the City," Defendants argue that Internal Affairs Division (IAD) records, personnel records, training records, officer complaint histories, Texas Commission on Law Enforcement (TCOLE) histories, and internal records or notations related to criminal investigation or prosecution are "confidential as a matter of law" and must be shielded from public view by a protective order. Doc. 52 at ¶¶ 2-8. Defendants are wrong. Texas statutes do not control here.

---

[2] Defendants ask this Court to make the following categories of police records confidential: (1) Houston Police Department offense reports (Doc. 52 at 2); (2) Internal Affairs Division records or files (*Id.* at ¶¶ 2-3); (3) Defendants' personnel records and files (*Id.* at ¶¶ 2, 6-7); (5) body worn camera recordings (*Id.* at ¶ 2); (6) police training record reports, officer complaint histories maintained by the police department, and Texas Commission on Law Enforcement (TCOLE) histories maintained by the police department (*Id.* at ¶ 3); (7) files maintained pursuant to Texas Local Gov't Code Sec. 143.089(g) (*Id.* at ¶ 8); and (8) internal law enforcement agency records maintained for internal use in a matter relating to law enforcement or prosecution (*Id.* at ¶ 4). Unless referring to specific documents, records, or files, Mr. Ramos will refer to these files collectively as "police records" throughout the rest of this Opposition for the reader's convenience.

The Fifth Circuit established long ago that where a plaintiff asserts only claims and defenses under Section 1983, as is the case here, federal common law governs discovery and evidentiary matters as opposed to state statutory law. Consequently, courts in this Circuit have denied motions for protective order concerning records that were considered confidential under Texas statutes. This is demonstrated in *Am. Civil Liberties Union of Miss., Inc. v. Finch*. 638 F.2d 1336, 1342 (5th Cir. 1981). In considering whether a federal district court had the power to override a state statute making certain public records "confidential" and "impounded," the *Finch* court made clear that any confidentiality designation created by Mississippi law "d[id] not apply in federal court of its own force." *Id.* at 1342. Rejecting the Mississippi privilege statute with a justification that still holds true today, the *Finch* court explained that "[t]he purpose of enacting [Section] 1983 was to ensure *an independent federal forum* for adjudication of alleged constitutional violations by state officials; and. . . there is a 'special danger' in permitting state governments to define the scope of their own privilege when the misconduct of their agents is alleged." *Id.* at 1343-44 (emphasis added). Ultimately, the *Finch* court reversed the district court's order to the extent that it held that the Mississippi statute automatically rendered the records in question confidential in the federal lawsuit at hand. *Id.* at 1345.

A neighboring district court recently reinforced that federal law governs protective orders in Section 1983 cases. Specifically, in *Roque v. Harvel*, a case involving an Austin police officer who killed a suicidal man during a wellness check, the court noted that there was no "good reason" to respect the evidentiary privilege that the TPIA and other Texas codes create in federal court "particularly because of the [Section 1983] claims [against the Austin Police Department and its officers] at issue." No. 1:17-cv-932-LY-SH, 2019 WL 5265292 at *9 (W.D. Tex. Oct. 16, 2019). The defendants in *Roque* argued that under Section 143.089 of the Texas Local Government Code,

police officer personnel records are exempt from public disclosure.[3] *Id.* at *7. In this case, Defendants cite this same provision in support of their motion for a protective order. Highlighting that the statutory privilege for Section 143.089(g) files is not absolute, the *Roque* court held:

> [T]he statutory privilege in Section 143.089 is not "intrinsically meritorious" because it inhibits public access to evidence that may be relevant to alleged unlawful conduct of state actors, whether that evidence is incriminating or exculpatory. Additionally, under the statute, a police department's disciplinary decision determines whether personnel files are public under subsection (a) or privileged under subsection (g).... A police department's disciplinary decision is a poor proxy for the public value of those records.

*Roque*, 2019 WL 5265292, at *9. Ultimately, the *Roque* court found that the training records, personnel files, internal affairs files, and other files stored under Section 143.089(g) should not have been shielded under a protective order. Mr. Ramos asks this Court for the same holding here.

Similarly, in *Ass'n of Am. Physicians & Surgeons, Inc. v. Texas Medical Board,* another Section 1983 case, the court denied a protective order for medical complaint records that were confidential under Tx. Occ. Code Ann. § 164.007(c), noting that "[statutory] privileges are strongly disfavored in federal practice." *See* No. A-08-CV-675-LY, 2011 WL 13274196, at *3 (W.D. Tex. Dec. 9, 2011).

Accordingly, it is settled law that "[w]hen considering a federal claim, federal courts apply federal common law, rather than state law, to determine the existence and scope of privilege." *Chauvin v. Sheriff Henry Lee,* No. 99-2200, 2000 WL 567006, at *1 (E.D. La. May 08, 2000) (explaining that a police officer's personnel files and IAD documents do not enjoy blanket

---

[3] Tex. Loc. Gov't Code Ann. § 143.089 (West) ("A fire or police department may maintain a personnel file on a fire fighter or police officer employed by the department for the department's use. Except as provided by Subsection (h), the department may not release any information contained in the department file to any agency or person requesting information relating to a fire fighter or police officer. The department shall refer to the director or the director's designee a person or agency that requests information that is maintained in the fire fighter's or police officer's personnel file.").

11

protection from discovery under federal common law); *Carnaby v. City of Houston*, No. 4:08-cv-1366, 2008 WL 4546606, at *3 (S.D. Tex. Oct. 10, 2008) (holding that attorneys and parties were not restricted from publicly disclosing the police records because Texas statutory privilege did not control the Section 1983 case and Defendants did not offer any valid reason for sealing).

## II.   Federal Law Favors Public Access to Records Bearing On Police Misconduct.

The application of federal law to the instant case, as is appropriate, necessitates the full disclosure of the police records Defendants wish to keep confidential. *See Finch,* 638 F.2d at 1343 ("[t]hat courts of a particular state would recognize a given privilege will not often of itself justify a federal court in applying that privilege."). Defendants' request to shield police records from public view is inconsistent with this Court's decision in *Carnaby v. City of Houston,* a Section 1983 case against the City of Houston and two of its police officers who shot and killed Roland Carnaby. *See* 2008 WL 4546606, at *2. In *Carnaby*, this Court denied defendants' Motion for Protective Order as it related to restricting the parties from sharing records received in discovery with the public because the public had a particular interest in matters of public safety as well as the deadly force policies of the local police department. *See id.* Additionally, this Court established that the public's interest in the case supported the public's "common law right of access," which justified the full disclosure of the IAD,[4] personnel, and investigative police records in question. *See id.*

---

[4] *Carnaby* also made clear that "[t]he contents of IAD files are regularly made public through court proceedings." 2008 WL 4546606, at *3. (citing *Fraire v. City of Arlington*, 957 F.2d 1268, 1272 (5th Cir. 1992) (an IAD report was quoted in a § 1983 suit brought against the Arlington Police Department following a police shooting); *Zavalla v. City of Houston*, 264 F.3d 1142 (5th Cir. 2001) (citing the results of an IAD investigation in Title VII case by former police employee); *Coughlin v. Lee*, 936 F.2d 1152, 1159 (5th Cir. 1991) (discussing IAD investigation files shared in First Amendment action after police officers were allegedly fired for their political beliefs)).

This Court's opinion in *Carnaby* is consistent with other precedent in this Circuit dating back over a decade. *See* 2008 WL 4546606, at *2; *see also Gutierrez,* 292 F.R.D. at 404. In *Gutierrez*, where plaintiffs brought suit against government agents for using excessive force while searching their home, the court explained that "the conduct of. . . law enforcement agents falls within those matters that would constitute issues of legitimate public concern." 292 F.R.D. at 405. Citing *Pansy,* 23 F.3d at 785, the *Gutierrez* court highlighted the strong presumption against entering confidentiality orders over files that constitute issues of legitimate public concern. 292 F.R.D. at 405. The *Gutierrez* court emphasized "that an informed public is desirable, that access to information prevents governmental abuse and helps secure freedom, and that, ultimately, [the] government must answer to its citizens." *Id.* (citing *Pansy*, 23 F.3d at 792). Finally, the *Gutierrez* court reasoned that "the public's interest in 'records indicating official misconduct, abuse of power, or constitutional violations by [d]efendants' is particularly legitimate and important." *Id.* at 405.

*Gutierrez* was decided more than ten years ago. Recent tragedies make public access to police records bearing on official misconduct, abuse of power, and constitutional violations by law enforcement even more pressing. Indeed, while there was a particularly legitimate and important public interest in records indicating police misconduct in 2013, this interest is overwhelming in 2025. During the twelve years since *Gutierrez*, thousands have lost their lives to police misconduct. Between 2017 and 2021, police killings have averaged 1,000 per year.[5] In 2020, George Floyd and Breonna Taylor were both brutally murdered by the police.[6] In 2022, 1,201 people lost their lives

---

[5] Police Brutality Center, *Police Brutality Statistics: What the Data Says About Police Violence in America*, (last updated Mar. 27, 2025), https://policebrutalitycenter.org/police-brutality/statistics/#:~:text=Between%202017%20and%202021%2C%20police%20killings%20held%20steady%2C,2023%20and%202024%2C%20it%20was%20closer%20to%201%2C200.

[6] DeNeen L. Brown, *'It Was a Modern-Day Lynching': Violent Deaths Reflect a Brutal American Legacy*, National Geographic (June 4, 2020),

in police killings.[7] At least 1,173 people were shot and killed by the police in 2024.[8] Plainly, there is an overwhelming, undeniable, and particularly important public interest in records that could indicate official misconduct, abuse of power, or constitutional violations by the Defendants in this case.

This issue is too important to get wrong. *See Pansy*, 23 F.3d at 785 ("[d]isturbingly, some courts routinely sign orders which contain confidentiality clauses without considering the propriety of such orders, or the countervailing public interests which are sacrificed by the orders."). Accordingly, this Court should deny Defendants' request that all police records be deemed confidential, because the conduct of law enforcement agents is an established issue of legitimate public concern and the police records in this case fall squarely within the public's common law right of access.

**III.   The Public's Common Law Right of Access to Defendants' Police Records —All of Which Bear on an Issue of Legitimate Public Concern—is not Outweighed by Defendants' Privacy Interests.**

When determining whether to grant a protective order, courts must balance the need for the information against the injury that could result if uncontrolled disclosure is compelled. *See Pansy*, 23 F.3d at 787. Here, the need for the information in Defendants' police records clearly outweighs their privacy interests, because they are public officials subject to legitimate public scrutiny. *See id.* ("Privacy interests are diminished when the party seeking protection is a public person subject to legitimate public scrutiny."); *see also Morrow v. City of Tenaha*, No. 2-08-cv-288-TJW, 2010 WL 3927969, at *4 (E.D. Tex. Oct. 5, 2010) ("Courts are especially unwilling to issue a protective

---

https://www.nationalgeographic.com/history/article/history-of-lynching-violent-deaths-reflect-brutal-american-legacy.

[7] Mapping Police Violence, *2022 Police Violence Report*, (last visited May 27, 2025), https://policeviolencereport.org/2022/.

[8] Police Brutality Center, *supra* note 5.

order merely to spare the defendant embarrassment where, as here, the defendants are public officials and the issues in the case are matters of public concern."). Therefore, the files that Defendants seek to shield from public view by a protective order should be made available without restriction. *See Segraves v. City of Zachary,* No. 08-357-JJB-SCR, 2009 WL 3764010, at *1 (M.D.La. Nov. 9, 2009) (refusing to limit the disclosure of all internal affairs records, prior civilian complaints, and prior lawsuits against all defendant officers).

While Defendants claim that personnel records must be prevented from full disclosure because they contain sensitive personal information, this is unnecessary. *See* Doc. 52. at ¶ 6. To the extent that any of Defendants' police records contain sensitive personal information, health information, or information protected by applicable statute, Mr. Ramos requests that such information be redacted rather than placing the entire file under a protective order. Courts routinely instruct litigants to employ redaction as a means of protecting sensitive information. *See Avondale Industries, Inc. v. NLRB*, 90 F.3d 955, 958 (5th Cir. 1996) (using redaction as a means of protecting a private individual's interests is permissible, provided the details sought to be deleted are reasonably segregable); *see also Chauvin v. Sheriff Harry Lee of Jefferson Parish,* et al, 2000 WL 567006, at *3 (redacting social security numbers, home addresses and home telephone numbers contained in law enforcement personnel and internal affairs files prior to production); *D'Antoni v. Kenner Police Officer Anthony Roach,* 1997 WL 627601, at *4 (E.D. La.) (finding that redacting social security numbers, home addresses, home telephone numbers and medical information contained in law enforcement personnel and internal affairs files prior to production was sufficient to protect privacy interests in a Section 1983 false arrest case). There is no reason why redaction would not be an appropriate compromise in this case.

### IV.  The Court Should Specifically Exclude Houston Police Department Reports and Body Worn Camera Footage from Any Protective Order Because, Although Defendants Have the Burden, They Failed to Offer Any Particular Basis on Which These Files Should Be Deemed Confidential.

Defendants argue that this Court should subject Houston Police Department offense reports and body worn camera recordings to a protective order because "the items are not subject to public disclosure as a matter of law and/or constitute an invasion of privacy rights of the individuals involved." *See* Doc. 52 at ¶ 2. Noticeably, Defendants make no mention of which law(s) forbid the public disclosure of these files, nor of any specific privacy rights on which they base their claim. Plainly, Defendants failed to meet their burden.

As indicated in *United Surgical Partners Intern., Inc. v. Stitt,* "the burden of justifying the confidentiality of each and every document sought to be covered by a protective order remains on the party seeking the protective order." No. 3:14-CV-0499-D, 2014 WL 2547062 at *2 (N. D. Tex. 2014) (citing *Cipollone v. Liggett Group*, 785 F.2d 1108, 112 (3rd Cir. 1986)). The Fifth Circuit has indicated that "Rule 26(c)'s requirement of a showing of good cause to support the issuance of a protective order indicates that 'the burden is upon the movant to show the necessity of its issuance, which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements.'" *In re Terra Int'l, Inc.* 134 F.3d at 306 (quoting *United States v. Garrett*, 571 F.2d 1323, 1326 n.3 (5th Cir. 1978)).

Here, the extent of Defendants' argument is the general, blanket premise that these documents are forbidden from public disclosure by law and that if disclosed, it would constitute an invasion of privacy. In *Gutierrez v. Benavides* when the defendants used the conclusory allegation that "great harm w[ould] result from dissemination of the requested documents," this Court found their argument deficient, noting that it was "unsupported by a particular and specific

16

demonstration of fact." 292 F.R.D. at 404 (quoting *In re Terra Int'l*, 134 F.3d at 306) (internal quotation marks omitted). Just as this Court determined that the lack of particularity was insufficient in *Gutierrez*, here too the Court should find the Defendants' request that Houston Police Department offense reports and body worn camera footage be included in the protective order governing this case inadequate. *See id.* at 404. In any case, Defendants' position is without basis. Incident reports and body worn camera footage are subject to public disclosure even under Texas statute. *See* Tex. Pub. Info. Act, Gov't Code § 552.001. As such, the protective order governing this case should not include offense reports or body worn camera footage.

## CONCLUSION

For the reasons stated above, Plaintiff Alberto Ramos respectfully requests that the Court deny Defendants' Motion for Confidentiality and Protective Order.

Respectfully submitted,

/s/ Destiny Planter
Caitlin Halpern (Texas Bar No. 24116474; S.D. Tex. Bar No. 3454643)*
caitlin.halpern@gmail.com
4416 Bell Street
Houston, TX 77023
Telephone: (571) 215-2002

Destiny Planter (pro hac vice)
Washington, D.C. Bar No. 1780910
destiny@civilrightscorps.org
Brittany Francis (pro hac vice)
brittany@civilrightscorps.org
1601 Connecticut Ave. NW, Suite 800
Washington, DC 20009
Telephone: (202) 844-4975
*Attorney-in-Charge

*Counsel for Plaintiff*

**CERTIFICATE OF SERVICE**

I certify that on June 2, 2025, a true and correct copy of this document was served on counsel of record via the CM/ECF System in accordance with the local rules of the United States District Court for the Southern District of Texas.

/s/ Destiny Planter