**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| ALBERTO RAMOS, | |
| Plaintiff | |
| v. | Case No. 4:23-cv-2517 |
| SCOTT ERWIN, JENNIFER GILBREATH, HALLIE SMITH, FREDRICK MORRISON, GINO DAGO, | **JURY DEMAND** |
| Defendants. | |

### PLAINTIFF ALBERTO RAMOS' MOTION TO COMPEL PRODUCTION

Pursuant to Federal Rule of Civil Procedure 37(a), Plaintiff Alberto Ramos respectfully requests an order compelling discovery from Defendants. By withholding records that are squarely relevant to the issues in this case, Defendants have flouted the purpose of discovery and forced Plaintiff's Counsel to expend far more time and resources than would otherwise be necessary to litigate this case.

## NATURE AND STAGE OF PROCEEDING

### A. Early Proceedings and Fifth Circuit Appeal

On July 10, 2023, Plaintiff Alberto Ramos filed a Complaint against Houston Police Department ("HPD") Officers Scott Irwin, Gino Dago, Frederick Morrison, Hallie Smith, and Jennifer Gilbreath (collectively, "Defendants") under 42 U.S.C. § 1983 for violating his Fourth Amendment Rights to be free from unlawful arrest and excessive force. *See* Doc. 1 ("Complaint"). Defendants each filed motions to dismiss, which Mr. Ramos opposed. *See* Docs. 12, 16, 20, 22, 26, 29. On March 19, 2024, the Court issued an Omnibus Order granting in part and denying in part all Motions to Dismiss. *See* Doc. 35. The Court did not dismiss any claims from Mr. Ramos' Complaint, but instead found some claims inapplicable to certain defendants. *See id.*

On April 16, 2024, Defendants filed a Notice of Appeal. *See* Doc. 36. On December 9, 2024, approximately eight months after the Defendants appealed, the United States Court of Appeals for the Fifth Circuit affirmed the Court's decision. J. No. 24-20164; Dec. 9, 2024.

### B. Defendants' Repeated Discovery Delays and Deficiencies

After new counsel for Plaintiff appeared, *see* Doc. 45, the parties submitted a Joint Discovery/Case Management Plan on May 2, 2025. *See* Doc. 49. Counsel for both parties indicated that they would "make the initial disclosures required by Rule 26(a) on or before May 15, 2025." Instead of sending all responsive documents on the agreed upon deadline, Defendants withheld

2

certain records pending entry of a Confidentiality and Protective Order, which they sent on May 15, 2025. *See* Doc 52. This further delayed the case. During a June 17, 2025 Motion Hearing, the Court rejected Defendants' proposed Protective Order and ruled in favor of Plaintiff's Proposed Protective Order. *See* Doc. 61.

On July 18, 2025, Plaintiff sent discovery requests to Defendants. Pursuant to an agreed extension, Defendants sent discovery responses on August 25, 2025. On October 6, 2025, Plaintiff's Counsel reached out to Defendants' Counsel about Defendants' deficient production and requested a meeting.

The parties met and conferred on October 7 and 10, 2025, and Defendants' Counsel represented to Plaintiff's Counsel: (1) that he would provide supplementations to cure *each* deficient response, with the exception of Plaintiff's RFP Nos. 27 and 28; and (2) that he was *only* withholding responses to Plaintiff's RFP Nos. 27 and 28 based on the objections made on August 25, 2025. Upon reviewing the supplemental production made on October 10, however, Plaintiff's Counsel determined that Defendants' production remained deficient.

On November 19, 2025, Plaintiff's Counsel again contacted Defendants' Counsel to address Defendants' deficient responses, thoroughly detailing the problems in an email, and asking to meet and confer. Plaintiff's Counsel did not receive a substantive response from Defendants' Counsel until November 25, 2025: the day of the parties' hearing on their Consent Motion for a 180-Day Extension of All Deadlines. During the hearing, Defendants' Counsel contradicted his prior representations and raised new objections to Plaintiff's discovery requests. In subsequent email correspondence, Defendants' Counsel confirmed that he intends to stand on these objections, which were not raised during the parties' meet-and-confers in early October.

In short, Plaintiff's good faith attempts to resolve the parties' discovery issues without court intervention has been unavailing. The parties have reached an impasse.

## STATEMENT OF THE ISSUES TO BE RULED UPON

1. Should Defendants be compelled to produce relevant HPD policies and training materials that were in use at the time of the Incident? **Yes, these files are reasonably accessible and squarely relevant to the case.**

2. Should Defendants be compelled to produce files regarding injuries to arrestees caused by the Defendants; use of force incidents involving the Defendants; and investigations of the Defendants for racial bias, excessive force, discrimination, and evidence fabrication? **Yes, these files directly address the Defendants' motive, intent, and absence of mistake in falsely arresting, tackling, and hogtying Plaintiff.**

3. Should Defendants be compelled to produce net worth files? **Yes, these files are routinely discoverable in connection with claims for punitive damages.**

## ARGUMENT

### A. Introduction

Despite two virtual meet and confers at Plaintiff's request, and subsequent email communications at Plaintiff's initiation, Defendants have failed to remedy their facially incomplete document productions. Plaintiff has yet to receive the following files responsive to his July 18, 2025 Requests for Production ("RFPs"): (1) relevant HPD policies and training materials in use at the time of the Incident; (2) files regarding injuries to arrestees caused by the Defendants; (3) files concerning use of force incidents involving the Defendants; (4) files related to investigations of the Defendants for racial bias, excessive force, discrimination, and evidence fabrication; and (5) files concerning the Defendants' net worth and ability to pay damages.

As this is a lawsuit against five Houston Police Department officers who falsely arrested, tackled, and hogtied Mr. Ramos in violation of the Fourth Amendment, all of the requested information is relevant, discoverable, and must be produced. Defendants' assertion that Plaintiff

seeks the aforementioned information solely to add a *Monell* claim ignores that each of the requested files addresses an integral issue in this individual-capacity lawsuit. Regardless, Plaintiff has been transparent that he intends to explore in discovery whether the constitutional violations he suffered the night of his wrongful arrest were caused by a municipal custom or policy of acquiescence to the use of excessive force. This approach is appropriate, and it is within this Court's sound discretion to deem municipal policy and custom within the scope of discovery in this case. *See Herbert v. Lando*, 441 U.S. 153, 176 (1979) (explaining that the "discovery rules are accorded a broad and liberal treatment to affect their purpose of adequately informing litigants in civil trials."); *see also Coleman v. American Red Cross,* 23 F.3d 1091, 1096 (6th Cir. 1994) (noting that "it is well established that the scope of discovery is within the sound discretion of the trial court").

For the reasons outlined below, Plaintiff now requests that the Court enter an order compelling Defendants to cure their deficient responses within one week of the date of the order. *See* Fed. R. Civ. P. 37(a).

**B. Defendants should be compelled to produce relevant HPD policies and training materials in use at the time of the Incident, as requested by Plaintiff's RFP No. 13,[1] because these files are reasonably accessible and fall squarely within the scope of the case.**

Plaintiff's RFP No. 13 seeks relevant HPD policies and training materials in use at the time of the Incident. *See* Ex. A. On August 25, 2025, Defendants responded by providing a link to an incomplete and redacted[2] compilation of HPD general orders that are publicly accessible via the Houston Texas government website. This response is deficient.

---

[1] *See* Ex. A, Plaintiff's Requests for Production and Defendants' Supplemental Responses Thereto.
[2] General Order 800-07: Criteria for Submitting Incident Reports, issued June 19, 2018, and General Order 500-01: Effectuating Arrests and Searches, issued May 2, 2019, are redacted on the Houston government website.

First, there is no legitimate basis for withholding the redacted information from Plaintiff. Under the limited Protective Order[3] that governs this case, confidential information may be redacted only in publicly available court filings. Doc. 61 ¶ 16. HPD policies and training materials in use at the time of the Incident are not exempt from production—indeed, they are not even rendered confidential by the Protective Order—and therefore, Defendants must produce unredacted versions of these files.

Second, some of the orders on the website were issued after the Incident,[4] meaning they could not have been in effect at the time of the Incident. Plaintiff requests that Defendants produce the versions of these orders that were in effect at the time of the Incident, as requested in RFP No. 13. *See* Ex. A.

Third, the publicly available compilation of general orders that Defendants point to does not include the training materials, internal communications, and numerous other records Plaintiff explicitly requested.[5] Moreover, the publicly available general orders do not cover all of the topics Plaintiff listed in RFP No. 13. *See* Ex. A. Specifically, Plaintiff is still missing HPD policies and

---

[3] Notably, Defendants previously asserted that they "do not seek to withhold documents from Plaintiff but to limit their public disclosure, ensuring compliance with legal obligations and protecting privacy rights." *See* Doc. 57 at 4. On June 17, 2025, the Court entered Plaintiff's Protective Order, which deems the following information confidential: (1) protected health information ("PHI") regarding the Plaintiff; (2) personal information that is protected by statute or otherwise required by law to be kept confidential, provided the statute or law is applicable and identified with production; (3) information held by a law enforcement agency that deals with the investigation of crime committed by a non-party if that investigation did not result in conviction or deferred adjudication, pursuant to Tex. Gov't Code §552.108(a)(2); and (4) sensitive and personal information. *See* Doc. 61 ¶ 4.

[4] The Use of Force and Use of Force Reporting General Orders on the Houston government website were both issued on March 4, 2022. The Incident occurred almost a year earlier.

[5] Plaintiff also requested policies, plans, protocols, procedures, orders, rules, regulations, guidelines, manuals, directives, pamphlets, customs, or practices, whether formal or informal, issued, received, or in use by the Houston Police Department at the time of the Incident described in the Complaint which relate to the allegations in the complaint or Defendants' Answer(s). Plaintiff has abbreviated this throughout as HPD policies and training materials.

training materials regarding numerous categories of law enforcement conduct, such as reasonable suspicion and probable cause; excessive force; qualified immunity; the use of spit hoods; de-escalation techniques; identifying a suspect; the use of four-point restraints or hog-tying; and providing medical care for persons in custody.

Defendants' Counsel can reasonably access the requested HPD policies and related training materials. This is demonstrated by Counsel's ability to access and disclose other HPD files, including files that are far more sensitive, such as Defendants' personnel and IAD files. Defendants have an obligation to produce discovery whether or not it is presently in their physical possession, so long as they have a legal right or practical ability to obtain it. *See, e.g.*, *Vestas-Am. Wind Tech., Inc. v. Salazar,* 2020 WL 6365549, at *5 (N.D. Tex. Oct. 21, 2020); *Autery v. SmithKline Beecham Corp.*, 2010 WL 1489968, at *2 (W.D. La. 2010); *Chesapeake Operating, Inc. v. Stratco Operating Co.*, 2009 WL 426101, *4 (M.D. La. 2009).

Moreover, Courts have routinely concluded that departmental policies and training materials fall squarely within the scope of discovery in Section 1983 police misconduct cases, because they bear on the reasonableness of an officer's conduct. *See* Fed. R. Civ. P. 26(b)(1); *Hope v. Pelzer,* 536 U.S. 730, 731 (2002) (considering an Alabama Department of Corrections regulation in evaluating the reasonableness of force used by the Defendant prison guards). Last year, in *Cruz,* the Fifth Circuit held that "failure to follow departmental policy makes actions more questionable" because it may be "objectively unreasonable to violate such a departmental rule." *Cruz v. Cervantez*, 96 F.4th 806, 814 (5th Cir. 2024), *cert. denied*, 145 S. Ct. 331 (2024) (quoting *Rice v. ReliaStar Life Ins. Co.*, 770 F.3d 1122, 1133 (5th Cir. 2014)) (cleaned up). The *Cruz* court also

held that the district court "likely erred in excluding" evidence of a potential violation of departmental policy, confirming the relevance of such documents. *Id.* at 814–15.[6]

In sum, Plaintiff urges the Court to compel production of all records that are responsive to Plaintiff's RFP No. 13. These records must be unredacted and contemporaneous to the incident underlying this lawsuit.

**C.    The Court should compel the production of files regarding injuries to arrestees caused by the Defendants; use of force incidents involving the Defendants; and investigations of the Defendants for racial bias, excessive force, discrimination, and evidence fabrication, as requested by Plaintiff's RFP Nos. 14, 15, and 20, because these files bear on Defendants' motive, intent, and absence of mistake in falsely arresting, tackling, and hogtying Plaintiff.**

Plaintiff's RFP No. 14 seeks reports regarding injuries to persons arrested by the Defendants throughout their tenures at HPD. *See* Ex. A. RFP No. 15 seeks files concerning use of force incidents involving the Defendants from July 10, 2016 to present. *See id.* RFP No. 20 seeks files pertaining to any administrative, quasi-judicial, or other investigation of the Defendants for excessive force, racial bias, discrimination, and evidence fabrication. *See id.* Defendants have refused to produce any records in response to these RFPs, on the one hand, raising multiple baseless objections, and on the other, insisting that none of these documents exist.

Each Defendant named in this case has been a police officer since at least 2017, making it improbable that there are *no* files concerning: (1) injuries to people they have arrested; (2) use of force incidents; or (3) administrative, quasi-judicial, or other investigations for excessive force,

---

[6] Defendants rely on other plain objections such as attorney-client privilege, attorney impressions, and "requires Defendants to prematurely marshal [their] proof," yet provide no bases on which these objections are brought. Ex. A. This request does not ask the Defendants to produce files that are protected by ACP, attorney impressions, and does not require Defendants to prematurely marshal their proof.

racial bias, discrimination, or evidence fabrication. In fact, the Defendants' personnel files make clear that at least one of them has been suspended for using unnecessary force, and at least one of them has been suspended for being untruthful in an incident report. The personnel files discuss Defendants' suspensions as a result of those infractions, but do not include any other files that are responsive to Plaintiff's RFP Nos. 14, 15, and 20.

Further, these files are relevant and discoverable because they could demonstrate that the Defendants' conduct towards Mr. Ramos was not a mistake and that they knew their conduct was wrongful. *See* Fed. R. Civ. P. 401 (explaining that the bar for relevance is low and noting that evidence is relevant if it "has *any* tendency to make a fact more or less probable than it would be without the evidence") (emphasis added). Among other valid purposes, such evidence "goes to prove motive, intent, and absence of mistake, which goes directly to punitive damages." *Hornback v. Czartorski,* 2022 WL 4279725, at *4 (W.D. Ky. Sept. 15, 2022) (allowing evidence related to the defendant officer's prior uses of force, investigations into his use of force, and related discipline to be heard at trial); *United States v. Mendez*, No. 08-20406-STA, 2009 WL 2982628, at *2 (W.D. Tenn. Sept. 11, 2009) (allowing evidence of "other acts" to prove "motive, opportunity, intent, [or] knowledge").

Defendants argue that they cannot produce certain records because Texas state law shields them from public access. This Court already ruled at the June 17, 2025 protective order hearing that these very same Texas statutory provisions are not controlling in this federal question case. During the hearing, the court explicitly stated that "*Carnaby* is on all four corners of this case." *See Carnaby v. City of Houston*, No. 4:08-cv1366, 2008 WL 4546606, at *3 (S.D. Tex. Oct. 10, 2008). Defendants cannot have a second bite at the apple.

### D. Defendants Must Produce Net Worth Files in Response to Plaintiff's RFP Nos. 27, and 28 as These Files Are Routinely Discoverable In Connection With Claims for Punitive Damages and Relevant to Their Ability to Pay.

Plaintiff's RFP Nos. 27 and 28 seek Defendants' tax returns and all documents related to their net worth. *See* Ex. A. Defendants have produced zero files in response to these Requests. Defendants' Counsel claims that Plaintiff inadequately disclosed his damages claims, ignoring that Plaintiff has requested punitive damages from the onset of this lawsuit. *See* Doc. 1, Compl. ¶ 107(c). Defendants' Counsel also claims that these Requests are overbroad and irrelevant. The law says otherwise.[7]

The Fifth Circuit and district courts in its jurisdiction agree that net worth is relevant to the issue of punitive damages, and punitive damages are recoverable in Section 1983 actions. *See Quest Med., Inc. v. Apprill,* 90 F. 3d 1080, 1091 (5th Cir. 1996) ("Net worth is relevant to the issue of punitive damages."); *see also Wilson v. Taylor,* 658 F.2d 1021, 1033 (5th Cir. 1981) ("This circuit, however, has held that punitive damages may be awarded in a S[ection] 1983 action even without actual loss, despite local law to the contrary."); *Gill v. Devlin,* 867 F. Supp. 2d 849, 857 (N.D. Tex. 2012) ("A plaintiff raising § 1983 claims may recover punitive damages against an official in his personal capacity if the official acted with malicious or evil intent or callous disregard of the plaintiff's federally protected rights."). As such, the Defendants must be compelled to produce evidence of their ability to pay damages, including tax returns and all documents related to their net worth.

---

[7] Defendants' Counsel also claims that these files are outside of the Defendants' possession. It is implausible that the Defendants do not have their own tax returns or other net worth documents in their possession.

### E. Request for Relief

Plaintiff respectfully requests the Court to enter an order requiring Defendants to produce the following files within one week from the date of the Court's order:

1. HPD policies, training materials, and other files requested in RFP. No. 13, including, without limitation, files concerning reasonable suspicion and probable cause; excessive force; qualified immunity; the use of spit hoods; de-escalation techniques; identifying a suspect; the use of four-point restraints or hog-tying; and providing medical care for persons in custody. (*See* Ex. A, RFP No. 13).

2. Files regarding injuries to persons arrested by the Defendants throughout their respective tenures at the Houston Police Department (*Id.* at RFP No. 14);

3. Files concerning use of force incidents involving the Defendants from July 10, 2016 to present (*Id.* at RFP No. 15);

4. Files pertaining to any administrative, quasi-judicial, or other investigation of the Defendants for excessive force, racial bias, discrimination, and evidence fabrication (*Id.* at RFP No. 20);

5. Defendants' tax returns (*Id.* at RFP No. 27); and

6. All other files related to Defendants' net worth (*Id.* at RFP No. 28).

Plaintiff also requests that the Court grant whatever other relief the Court deems appropriate.

## CONCLUSION

WHEREFORE, for the foregoing reasons, as well as those set forth in his Plaintiff Alberto Ramos respectfully requests that this Court grant his Motion to Compel Discovery

Respectfully submitted this 17th day of December, 2025.

**RULE 37 CERTIFICATION**

I hereby certify that the undersigned, Plaintiff's Counsel, have conferred in good faith with counsel for the Defendants in an attempt to obtain the requested discovery without court action.  Those efforts are described in the Motion.

**CERTIFICATE OF SERVICE**

I certify that on December 17, 2025, a true and correct copy of this document was properly  served on counsel of record via electronic filing in accordance with the United States District  Court for the Southern District of Texas Procedures for Electronic Filing.

*/s/ Destiny Planter*
Destiny Planter

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| ALBERTO RAMOS, | |
| *Plaintiff* | |
| v. | Case No. 4:23-cv-2517 |
| SCOTT ERWIN, JENNIFER GILBREATH, HALLIE SMITH, FREDRICK MORRISON, GINO DAGO, | **JURY DEMAND** |
| *Defendants.* | |

**[PROPOSED] ORDER GRANTING PLAINTIFF ALBERTO RAMOS' MOTION TO COMPEL PRODUCTION**

Having considered Plaintiff Alberto Ramos' Motion and finding good cause, **IT IS HEREBY ORDERED** that Plaintiff's Motion to Compel Production, filed December 17, 2025 is **GRANTED.**

**IT IS THEREFORE ORDERED** that on or before _____, Defendants' Counsel shall produce:

1. HPD policies, training materials, and other files requested in RFP. No. 13, including, without limitation, files concerning reasonable suspicion and probable cause; excessive force; qualified immunity; the use of spit hoods; de-escalation techniques; identifying a suspect; the use of four-point restraints or hog-tying; and providing medical care for persons in custody. (*See* Ex. A, Plaintiff's RFP No. 13).

2. Files regarding injuries to persons arrested by the Defendants throughout their respective tenures at the Houston Police Department (*Id.* at RFP No. 14);

3. Files concerning use of force incidents involving the Defendants from July 10, 2016 to present (*Id.* at RFP No. 15);

4. Files pertaining to any administrative, quasi-judicial, or other investigation of the Defendants for excessive force, racial bias, discrimination, and evidence fabrication (*Id.* at RFP No. 20);

5. Defendants' tax returns (*Id.* at RFP No. 27); and

6. All other files related to Defendants' net worth (*Id.* at RFP No. 28).

**IT IS SO ORDERED.**

Signed on _____, in Houston, Texas


_____

Hon. Keith P. Ellison
United States District Judge