**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| ALBERTO RAMOS, | |
| Plaintiff | |
| v. | Case No. 4:23-cv-2517 |
| SCOTT ERWIN, JENNIFER GILBREATH, HALLIE SMITH, FREDRICK MORRISON, GINO DAGO, | **JURY DEMAND** |
| Defendants. | |

**PLAINTIFF ALBERTO RAMOS'S OPPOSITION TO**
**HOUSTON POLICE DEPARTMENT'S MOTION TO QUASH**

In response to discovery requests served by Plaintiff Alberto Ramos ("Plaintiff"), Defendants Scott Irwin, Jennifer Gilbreath, Hallie Smith, Fredrick Morrison, and Gino Dago (collectively, "Defendants") have insisted that they do not have access to certain documents maintained by their employer, the Houston Police Department ("HPD"). Accordingly, Plaintiff served a subpoena on HPD seeking four categories of documents that are highly relevant to the claims and defenses in this Section 1983 case involving an unlawful arrest and excessive use of force: (1) certain HPD policies in effect at the time of the incident; (2) reports regarding injuries to arrestees caused by the Defendants; (3) records concerning use of force incidents involving the Defendants; and (4) documents related to investigations of the Defendants for racial bias, excessive force, discrimination, and evidence fabrication. *See* Ex. 1.

HPD responded by filing a Motion to Quash (the "Motion"), which asserts many of the same arguments Defendants previously made in a Motion to Quash of their own, as well as in

1

response to Plaintiff's Motion to Compel. HPD's objections—that the subpoena provides insufficient time to respond, seeks irrelevant and/or confidential information, and imposes an undue burden—are baseless. Plaintiff has worked tirelessly for the past year to obtain the essential information sought in the subpoena and respectfully requests the Court's assistance in moving this case forward. The Motion should be denied.

## BACKGROUND

On July 10, 2023, Plaintiff Alberto Ramos filed a Complaint against Houston Police Department ("HPD") Officers Scott Irwin,[1] Gino Dago, Frederick Morrison, Hallie Smith, and Jennifer Gilbreath (collectively, "Defendants") under 42 U.S.C. § 1983 for violating his Fourth Amendment rights to be free from unlawful arrest and excessive force. *See* Doc. 1 ("Complaint"). This Court denied Defendants' motions to dismiss on March 19, 2024, *see* Doc. 35, and the Fifth Circuit affirmed on December 9, 2024, *see* Doc. 36.

Since then, Plaintiff has struggled to obtain basic, critical discovery from Defendants and their employer, HPD. Plaintiff first requested the policies and personnel records at issue here in Requests for Production served on each Defendant on July 18, 2025. In responses served on August 25, 2025, and during meet-and-confers held in October and November 2025, Defendants agreed to produce at least some of these records. Now, however, Defendants have taken the position that the very policies they are governed by as HPD officers and their own employment-related records are outside their possession, custody, or control.

Accordingly, on January 22, 2026, Plaintiff served a subpoena on HPD. *See* Ex. 2. Service was effected by certified U.S. mail, as authorized by the HPD website:

---

[1] This is the correct spelling of Defendant Irwin's name, which was spelled incorrectly as "Erwin" in prior submissions.

**Subpoena:** −

Subpoenas are handled by the Records Division, HPD Custodian of Records, 713 308-9120 and can be submitted via:

- US mail - HPD, Records Division, 1200 Travis, Houston, TX 77002
- In person - HPD Administration Building, 1200 Travis, 23rd floor

When HPD failed to respond, and Defendants asserted that service was improper in a motion to quash the subpoena, *see* Doc. 76, Plaintiff served the same subpoena again via personal service on March 13, 2026, *see* Ex. 1. HPD responded by filing the Motion to Quash. Doc. 92.

## ARGUMENT

### A. The Subpoena Provided a Reasonable Time for Compliance.

HPD first received Plaintiff's subpoena on January 22, 2026, at the address listed on the Department's own website. *See* Ex. 2. HPD therefore had ***more than two months*** to collect, review, and produce the requested documents before the March 26, 2026 deadline.

Plaintiff's decision to re-serve the same subpoena in person, in an abundance of caution, should not re-start the clock. And even if it did, a two-week turnaround is reasonable, both under the Federal Rules of Civil Procedure and in light of the targeted set of documents requested. Two weeks after service is the default deadline to object to a subpoena, and the Rules recognize that the "time for compliance" may be "earlier." Fed. R. Civ. P. 45(d)(2)(B) ("The objection must be served before the ***earlier*** of the time specified for compliance or 14 days after the subpoena is served.") (emphasis added); *see also, e.g., Ramirez v. Abreo*, No. 5:09-CV-189-C, 2010 WL 11565408, at *2 (N.D. Tex. Mar. 1, 2010) ("Rule 45 contemplates production of materials in periods less than 14 days ....").

Moreover, contrary to HPD's characterization, the requests are neither "broad" nor "voluminous." Motion at 2. Plaintiff served four document requests that call for review of just two

3

categories of records: (1) HPD policies in effect at the time of the incident, and certain personnel records for the five Defendants, namely, reports concerning (2) injuries to arrestees, (3) use of force incidents, and (4) investigations for racial bias, excessive force, discrimination, and evidence fabrication. *See* Ex. 1. Plaintiff's first request is detailed and specific, facilitating an efficient keyword search by HPD's records custodian. And unless Defendants' conduct as law enforcement officers has been exceptionally poor, leading to numerous incidents and investigations, the production responsive to the remaining three requests should be small. In fact, Defendants' counsel at one point suggested that no responsive documents exist. Accordingly, the time for compliance—whether counted as two weeks or two months after service of the subpoena—was reasonable. *See, e.g., Hossfeld v. Allstate Ins. Co.*, No. 4:24-MC-142, 2025 WL 2323918, at *3 (E.D. Tex. Aug. 12, 2025) ("[C]ourts throughout this Circuit have routinely held that fourteen days is a reasonable time period to respond to a subpoena.") (collecting cases).

In the alternative, should the Court conclude that the document requests in the subpoena require a longer time for compliance, Plaintiff requests that the Court exercise its discretion to avoid further delay by modifying the subpoena instead of quashing it entirely. *See* Fed. R. Civ. P. 45(d)(3)(A) ("[T]he district court ... must quash *or modify* a subpoena that fails to allow a reasonable time to comply.") (emphasis added).

**B. Plaintiff is Entitled to Production of Relevant HPD Policies in Effect at the Time of the Incident.**

The first document request in the subpoena seeks specified HPD policies that were in effect at the time of the incident. Courts have routinely concluded that departmental policies fall squarely within the scope of discovery in Section 1983 police misconduct cases, with or without a *Monell* claim, because they bear on the reasonableness of each individual officer's conduct. Indeed, the Fifth Circuit recently held that an officer's "failure to follow departmental policy makes [their]

4

actions more questionable, because it is questionable whether it is objectively unreasonable to violate such a departmental rule." *Cruz v. Cervantez*, 96 F.4th 806, 814 (5th Cir. 2024), *cert. denied*, 145 S. Ct. 331 (2024) (quoting *Rice v. ReliaStar Life Ins. Co.*, 770 F.3d 1122, 1133 (5th Cir. 2014)). The *Cruz* court also held that the district court "likely erred in excluding" evidence of a potential violation of departmental policy. *Id.* at 814–15; *see also, e.g.*, *Hope v. Pelzer,* 536 U.S. 730, 731 (2002) (considering an Alabama Department of Corrections regulation in evaluating the reasonableness of force used by the Defendant prison guards). While it is true that the violation of a policy, by itself, "do[es] not necessarily state a constitutional claim," *Harris v. Payne*, 254 F. App'x 410, 416-17 (5th Cir. 2007), the cases cited in HPD's Motion analyzed departmental policies—and therefore must have allowed discovery of them, *see* Motion at 4 (citing *id.*; *Fraire v. City of Arlington*, 957 F.2d 1268, 1276 (5th Cir. 1992) (same)).

HPD's claim of undue burden is wholly unsubstantiated. On a motion to quash asserting undue burden, "the moving party has the burden of proof to demonstrate that compliance with the subpoena would be unreasonable and oppressive. The moving party opposing discovery must show how the requested discovery was overly broad, burdensome, or oppressive by submitting affidavits or offering evidence revealing the nature of the burden." *MetroPCS v. Thomas*, 327 F.R.D. 600, 609 (N.D. Tex. 2018) (citations omitted). The Motion to Quash makes no attempt to explain why HPD cannot either use Plaintiff's detailed requests to conduct an efficient keyword search, or simply produce all policies in effect at the time of the incident.

In evaluating a claim of undue burden, courts consider "(1) relevance of the information requested; (2) the need of the party for the documents; (3) the breadth of the document request; (4) the time period covered by the request; (5) the particularity with which the party describes the requested documents; and (6) the burden imposed." *Id.* Because Plaintiff's request is tailored to

subjects directly related to his claims, the documents are plainly (1) relevant, (2) necessary, and (3) not excessively broad. Additionally, the request is (4) limited to the narrowest possible time period, the date of the incident, and (5) described with great particularity. As a result, HPD's bald assertion of burden disproportionate to the needs of the case cannot carry the day.

### C. Plaintiff is Entitled to Discovery of Reports Reflecting Defendants' Knowledge and Absence of Mistake.

Plaintiff's remaining requests seek reports regarding injuries to persons arrested by the Defendants, use of force incidents involving the Defendants, and investigations into excessive force, racial bias, discrimination, or evidence fabrication by the Defendants during their tenures at HPD. *See* Ex. 1. These documents are relevant and discoverable because, among other permissible uses, they may show that the Defendants knew their conduct toward Mr. Ramos was unlawful. *See* Fed. R. Civ. P. 401 (explaining that the bar for relevance is low and noting that evidence is relevant if it "has any tendency to make a fact more or less probable than it would be without the evidence"). Such evidence also "goes to prove motive, intent, and absence of mistake, which goes directly to punitive damages." *Hornback v. Czartorski,* 2022 WL 4279725, at *4 (W.D. Ky. Sept. 15, 2022) (allowing evidence related to the defendant officer's prior uses of force, investigations into his use of force, and related discipline to be heard at trial); *see also, e.g.*, *United States v. Mendez*, No. 08-20406-STA, 2009 WL 2982628, at *2 (W.D. Tenn. Sept. 11, 2009) ("Character evidence in the form of other acts may be relevant ... to prove another matter such as motive, opportunity, intent, knowledge"). Indeed, this Court recognized nearly two decades ago that investigatory files "are regularly made public through court proceedings" in federal civil rights cases. *Carnaby v. City of Houston*, No. CIV.A.4:08-CV-1366, 2008 WL 4546606, at *3 (S.D. Tex. Oct. 10, 2008) (Ellison, J.) (collecting cases).

HPD's arguments to the contrary fail. Its primary contention is that it cannot produce the requested records because Texas state law shields them from public access. *See* Motion at 3-4. But this Court already ruled at the parties' June 17, 2025 protective order hearing that these very same Texas statutory provisions are not controlling in this federal question case. *See* Doc. 61 (adopting Plaintiff's proposed protective order, over Defendants' objections). As this Court held in *Carnaby v. City of Houston,* which it noted during the June hearing is on all fours with this case, "when considering a federal claim, federal courts apply federal common law, rather than state law, to determine the existence and scope of privilege." 2008 WL 4546606, at *3 (quoting *Chauvin v. Sheriff Henry Lee*, No. 99–2200, 2000 WL 567006, at *1 (E.D.La. May 08, 2000)) (citing Fed. R. Evid. 501); *accord Coughlin v. Lee*, 946 F.2d 1152, 1159 (5th Cir. 1991). It is telling that the only cases HPD cites in support of this argument are state court cases involving state law claims, which were governed by state law privileges. *See* Motion at 4. Even in that context, the Texas Court of Appeals in San Antonio found that "use of force" reports are not confidential under state law and compelled production. *See City of San Antonio v. San Antonio Exp.-News*, 47 S.W.3d 556, 558 (Tex. App.—San Antonio 2000).

HPD also argues that records of internal investigations are sometimes found inadmissible at trial. *See* Motion at 4. As Plaintiff argued in response to an identical argument in Defendants' Motion to Quash, *see* Docs. 76, 80, this point misses the mark by conflating discoverability with admissibility. At this stage, the Court need not decide what evidence should be "excluded under Rule 403." *Id.* The possibility that certain materials may ultimately be found "impermissible at trial" does not mean those materials are exempt from discovery. *Id.*; *see also, e.g.*, *Clay v. Sunrise Breach Corp.*, No. 5:10-CV-224, 2011 WL 13217902, at *7 (E.D. Tex. Nov. 8, 2011) ("Whether or not portions of the [requested] file will ultimately be deemed admissible at trial is not the test

for whether it is discoverable."). Rather, discovery requests need only be "reasonably calculated to lead to the discovery of admissible evidence." *Degen v. United States*, 517 U.S. 820, 826 (1996) (quoting Fed. R. Civ. Proc. 26(b)(1)). "The threshold for relevance in discovery matters is extremely low," *Wellogix, Inc. v. Accenture, LLP*, No. 3:08-CV-119, 2011 WL 1458632, at *5 (S.D. Tex. Apr. 15, 2011) (Ellison, J.), and Plaintiff's subpoena easily satisfies the applicable standard.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny HPD's Motion to Quash.

/s/ Caitlin Halpern
Caitlin Halpern
(Texas Bar No. 24116474; S.D. Tex. Bar No. 3454643)
caitlin.halpern@gmail.com
4416 Bell Street
Houston, TX 77023
Telephone: (571) 215-2002


Destiny Planter *(pro hac vice)*
Washington, D.C. Bar No. 1780910
destiny@peoplescounsel.org
Brittany Francis* (Texas Bar No. 24141616; S.D. Tex. Bar No. 3837908)
brittany@peoplescounsel.org
1900 W. Gray Street
P.O. Box 130442
Houston, TX 77219
*Attorney-in-Charge

*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I certify that on April 8, 2026, a true and correct copy of this document was properly  served

on counsel of record via electronic filing in accordance with the United States District  Court for

the Southern District of Texas Procedures for Electronic Filing.


*/s/ Caitlin Halpern*
Caitlin Halpern